67783. THICO PLAN, INC. v. ASHKOUTI et al.
67784. STANDARD FIRE INSURANCE COMPANY
v. ASHKOUTI et al.

BENHAM, Judge.

Appellees are a group of persons claiming ownership of an apartment complex which was damaged by fire. Appellant The Standard Fire Insurance Company ("Standard") issued a policy of fire insurance covering the damaged property. Appellant Thico Plan, Inc. ("Thico") is a premium financing company which financed part of the premiums on the policy issued by Standard.

Contending that payments under a financing agreement were late and that a payment check was dishonored by appellees' bank, Thico sent notices of intent to cancel the policy in June and July of 1980 and, pursuant to a power of attorney contained in the financing agreement, sent a notice of cancellation to Standard in August 1980. A fire occurred in the apartments in October 1980, and this lawsuit arose from Standard's refusal to pay damages incurred in that fire. The jury awarded the appellees $30,000 actual damages, $10,000 "additional" damages, and $20,000 attorney fees against Thico; and $83,000 actual damages, $16,000 bad faith penalty, and $5,000 attorney fees against Standard. These appeals, consolidated for decision, are from the judgment entered on that verdict.

1. In its first and second enumerations of error, Standard contends that the trial court erred in its jury charge concerning the verdict form and in entering judgment on the jury's verdict. Both enumerations of error are based on an assertion that only one of the appellants could be liable: if the policy was cancelled, only Thico could be liable; if the policy was not cancelled, only Standard could be liable. Standard offers no authority in support of that assertion or any argument consistent with the record of the case. The asserted bases of recovery against appellants were that Thico interfered with appellees' contract of insurance with Standard and that Standard refused in bad faith to pay benefits due under the contract. We do not find those claims either inconsistent or contradictory. If appellees' evidence was accepted by the jury, it would authorize a finding that Thico's wrongdoing influenced Standard and that it was a combina-

tion of wrongs which led to appellees' damages. We hold, therefore, that Standard's first and second enumerations of error present no basis for reversal of the judgment.

2. Standard's third and Thico's first enumerations of error concern opening and closing arguments. "Where the defendant in a civil action introduces no evidence, he is entitled to make the opening and concluding arguments before the jury. [Cits.] A denial of this right is error requiring reversal of the case. [Cit.]" *Jones v. Chambers*, 94 Ga. App. 433 (95 SE2d 335) (1956). Appellants rested their case without introducing any evidence after appellees rested their case. When appellants sought to make both opening and closing arguments, the trial court ruled that they had waived their right to do so by introducing evidence. The evidence identified by the trial court as having been introduced by appellants consisted of a reading by Standard's counsel of omitted portions of depositions from which appellees' counsel had read selected excerpts.

"If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts." OCGA § 9-11-32 (a) (5). Appellants insist that Standard's counsel, in reading the omitted portions of the depositions, was exercising the right given in the quoted Code section to require the introduction of other relevant parts. Appellees argue that the portions read by Standard's counsel were not relevant and were introduced by Standard under the authority of the closing phrase of the quoted Code section. Our review of the record persuades us to adopt appellants' point of view.

Appellees' counsel read into the record portions of two depositions in which witnesses were questioned concerning the production and distribution by Thico of notices of intent to cancel and notices of cancellation. When he finished reading from the first deposition, appellees' counsel asked the following question: "Before I move forward, is there any portion that you gentlemen feel is relevant to the issues that should be read at this time?" Thico's counsel made an immediate affirmative response, after which Standard's counsel stated that he wished to read into the record part of the cross-examination of the witness. A bench conference was held at that time, following which Standard's counsel read part of the deposition. After appellees' counsel read from the second deposition, Standard's counsel indicated that he wished to read some additional portions and was permitted to do so.

"The question for the Court in all such cases, is, was there any evidence introduced for the defence, against the complainant's demand?" *King v. King*, 37 Ga. 205, 216 (1867). While we recognize the difficulty faced by the trial court, weighing the forceful arguments of

counsel for all the parties and limited in the amount of time available to consider the issue, it is our conclusion that the trial court in the present case answered the question posed in *King,* supra, incorrectly. We find it apparent that appellants' counsel wished additional relevant portions of the depositions read to the jury, and that in so doing they were exercising the right given them in the Code section quoted above to require the introduction of the remaining relevant portions of the depositions. Under the circumstances of this case, the correct ruling would have been the same as that approved in *Alsberg & Co. v. Harper Mfg. Co.,* 28 Ga. App. 367, 368 (111 SE 578) (1922), where this court held as follows: "Upon the trial the plaintiff introduced in evidence certain parts of the depositions of a witness, and thereupon the court allowed the defendant, over the objections of the plaintiff, to read to the jury other parts of the depositions, and ruled that this testimony should be considered as evidence of the plaintiff. The court did not err in so ruling. [Cit.]" We are of the opinion that the trial court in the present case erred in denying appellants the opportunity to make both opening and closing arguments. Under the holding in *Jones v. Chambers,* supra, the denial of that valuable right requires reversal of the judgment.

3. Standard's fifth enumeration of error is directed to the trial court's jury instruction based on OCGA § 33-24-44 regarding cancellation of insurance policies by the insurer. Standard's argument is that the charge was inapplicable because the policy in this case was not cancelled by the insurer but by the premium finance company in the name of the insured. However, subsection (c) of OCGA § 33-24-44 has been held applicable to situations in which a policy financed through a premium finance company is cancelled (*Balboa Ins. Co. v. Hunter,* 165 Ga. App. 273 (299 SE2d 91) (1983)) and was directly applicable to an issue in this case. It is not generally a ground for a new trial that the trial court gives an entire Code section in its charge although only part of the section is applicable under the evidence. *Thompson v. Mitchell,* 192 Ga. 750 (2) (16 SE2d 540) (1941). We find no factors in the present case to take it outside the general rule stated above.

4. In its sixth enumeration of error, Standard complains of the trial court's refusal to instruct the jury concerning the right of an insured to cancel an insurance policy. The language requested was taken from a case involving an insured's right to the cash value of a life insurance policy. Since the present case involves a fire insurance policy which contained no provision for the accrual of cash value, the requested instruction was inapplicable and its refusal was not error. *Ackerman/Adair Realty Co. v. Coppedge,* 155 Ga. App. 903 (1) (273 SE2d 645) (1980).

5. Appellees' efforts to recover against appellants began in 1980. The complaint in the present case was filed in March 1982. Between

those times, according to the uncontradicted testimony of appellees' counsel, a suit was filed in the Superior Court of Fulton County and then dismissed so that a new complaint could be filed to simplify and consolidate the pleadings; the second complaint was subsequently dismissed so that the suit could be refiled in the State Court of Fulton County for the purpose of speeding the trial of the case. Standard argues in its seventh enumeration of error that the trial court erred in denying Standard's motion for a directed verdict as to those attorney fees attributable to the former actions. We disagree.

Appellants offer no authority, and we are aware of none, limiting recovery for attorney fees to the period of time between the filing of the complaint under which the case is ultimately submitted to the jury and the date of the judgment. The attorney fees sought by appellees were, according to the testimony of their counsel, incurred in the effort to recover on their claim against appellants. In our view of the case, the filing of and dismissal of the intermediate complaints were as much a part of this litigation as were the taking of depositions, conferences with clients and with opposing counsel, and the other activities normally attendant to pursuing a legal claim. The present case is distinguishable from those such as *Woodland Hills Co. v. Coleman*, 73 Ga. App. 409 (9) (36 SE2d 826) (1946), and *Randolph v. Merchants &c. Loan Co.*, 58 Ga. App. 566, 573 (199 SE 549) (1938), where there were efforts to collect attorney fees for actions which were ancillary to those for which the expenses of litigation were sought. Here, the dismissed complaints were part of the linear progression from claim to judgment. We find no error in the trial court's refusal to grant a directed verdict to Standard on that issue.

6. The eighth and ninth alleged errors enumerated by Standard concern the trial court's refusal to grant a partial directed verdict to Standard on the issue of lost rental income. Standard's argument that there is no competent evidence authorizing a verdict for lost rents is specious. One of the owners testified to the amount of rent charged, the length of time the damaged apartments had been vacant, and the overhead expenses which would need to be subtracted from the gross rental losses. That evidence was sufficient to permit the jury to calculate the amount of lost rental income. Standard also argues that appellees were entitled to damages for lost rent for a maximum of 120 days. That argument is based on a policy provision limiting Standard's liability for lost rent to the period of time reasonably required to rebuild. Citing evidence that the apartments here could be rebuilt in a maximum of 120 days, Standard insists its liability should be limited to that period. What is overlooked in that argument is evidence which would authorize the jury to conclude that the delay in rebuilding the apartments was due to Standard's bad faith refusal to make payment under the policy. Under those circumstances, Stan-

dard was not entitled to the directed verdict it sought on the issue of lost rental income.

7. Thico's second and Standard's fourteenth enumerations of error complain of the denial of their motions for a directed verdict on the issues of punitive damages, statutory penalties and attorney fees for bad faith refusal to pay. Standard also enumerates as error the trial court's charge that the jury could consider the issues of bad faith penalties and attorney fees. We find no such errors.

There was evidence from which the jury could conclude that Thico wrongfully attempted to cancel appellees' insurance policy and then, after having sent Standard a notice of cancellation, retained funds subsequently paid by appellees. Testimony concerning the attempted cancellation of the policy would permit the conclusion that Standard refused to pay under the policy at a time when it should have known that the statutory procedures for cancellation had not been followed. It follows that the jury was authorized to determine the question of bad faith penalties, attorney fees, and punitive damages. That being so, the trial court did not err in submitting those issues to the jury.

8. Thico argues in its third enumeration of error that the trial court should have given Thico's requested charge on punitive damages. The requested language is from this court's decision in *BLI Constr. Co. v. Debari*, 135 Ga. App. 299 (217 SE2d 426) (1975), and concerned the standard to be applied to a claim for punitive damages in a negligence case. Since the tort with which Thico was charged, interference with contractual rights, is an intentional tort (*Bible Farm Svc. v. House Hasson &c. Co.*, 157 Ga. App. 358 (3) (277 SE2d 341) (1981)), the requested charge was inappropriate and its refusal no error. *Ackerman/Adair Realty Co. v. Coppedge*, supra.

9. Thico served a subpoena on two of the appellees, seeking discovery of their state and federal income tax returns and the returns of any entity operating or managing the apartments. The reason given by Thico for seeking the returns was to show that appellees were financially able to mitigate their damages by rebuilding the apartments at their own expense rather than leaving the damaged apartments empty and untenantable, and to impeach appellees' testimony regarding their losses.

Under this court's holding in *Crosswell v. Arten Constr. Co.*, 152 Ga. App. 162 (262 SE2d 522) (1979), the trial court, in its discretion, could have ordered the production of the tax records sought. Since it is unclear from the record whether the trial court exercised that discretion or was even aware that it had a discretionary decision to make, and since our holding above requires reversal of the judgment, we will not now determine whether the trial court erred in refusing to enforce the subpoena. However, if this case is retried, the trial court is

directed to consider Thico's request in light of *Crosswell*, supra.

10. The notice of cancellation Thico sent in August 1980 followed the return of appellees' check because of insufficient funds. The evidence showed that Thico sent the check back through the bank and retained the proceeds thereof. Over Thico's objection, the trial court instructed the jury that retention of a dishonored check and insistence on its payment instead of repudiation of the transaction results in a waiver of punctual payment of an insurance premium. The giving of that charge is Thico's fifth enumeration of error.

The charge was taken from *Liberty Nat. Life Ins. Co. v. Davis*, 146 Ga. App. 38 (2) (245 SE2d 316) (1978). Thico argues that the real holding in that case, contained in its third division, was that mere retention of a check was not sufficient to show a waiver of punctual payment. Actually, the holding was that there was not sufficient proof, on motion for summary judgment, to conclusively establish a waiver under that rule. The circumstances in the present case differ from those in the cited case. Here, there was sufficient evidence for a jury to conclude that Thico had retained the check and insisted on its payment rather than taking the proper steps to repudiate the transaction. We see no error in giving the charge.

11. Thico's sixth and seventh enumerated errors concern the refusal of Thico's charge on mitigation of damages and the giving of appellees' requested charge on that issue. In its charge on mitigation of damages, the trial court instructed the jury that it was for them "to determine whether the plaintiffs, as prudent individuals, are reasonable in taking the steps which they took to avoid their damages." We agree with Thico that the charge, as given, implied that appellees were prudent and that they had taken steps to mitigate their damages. On retrial, if there is one, a more neutral paraphrase of the holding in *Reid v. Whisenant*, 161 Ga. 503 (131 SE 904) (1925), the source of the charge, should be employed if the issue of mitigation of damages is raised and supported by the evidence.

We do not, however, find any error in the trial court's refusal to give Thico's requested instruction on mitigation of damages. A contention that a plaintiff could have and should have mitigated damages " 'must be supported by evidence from which a jury could reasonably estimate the amount by which damages could have been mitigated.' [Cit.]" *Ga.-Pacific Corp. v. Krulic*, 164 Ga. App. 454, 455 (297 SE2d 353) (1982). Neither appellant in this case put on any evidence at all, and nothing elicited from appellees' witnesses provided a basis for accurately determining the question of mitigation of damages. It was not error, therefore, to refuse Thico's requested instructions on the issue. Id.

12. Thico's eighth and final enumeration of error is concerned with the trial court's refusal to give a requested instruction to the

effect that the jury could not award damages against Thico if it found that the policy issued by Standard was in effect and provided coverage for appellees' loss. That argument is without merit, both for the reasons given in the first division of this opinion and because there was evidence from which the jury could find damages exceeding the limits of the contract on which the action against Standard was based. It follows, therefore, that a recovery against both defendants would be possible without an illegal double recovery and that Thico's requested charge was properly refused.

13. The remaining enumerations of error need not be addressed in detail. Standard's fourth enumeration concerned a remark by the trial judge which is unlikely to recur on a retrial. Standard's enumerations of error 10 through 13 were not supported by argument or citation of authority and are deemed abandoned. Court of Appeals Rule 15 (c) (2); *Haskins v. Jones*, 142 Ga. App. 153 (1) (235 SE2d 630) (1977). Standard's final enumeration of error was that the trial court erred in denying Standard's motion for a new trial. In light of the errors noted above, we are constrained to agree that a new trial should have been granted.

*Judgment reversed. Banke, P. J., and Pope, J., concur.*

DECIDED JULY 10, 1984.

*John P. Hines*, for appellant (case no. 67783).
*William Lewis Spearman*, for appellant (case no. 67784).
*Patrick L. Swindall*, for appellees.